**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

DANIEL P. KLAHN SR.,             )
                                 )
      Plaintiff,           )   Case No.: 2:16-cv-00719-GMN-CWH
   vs.                           )
                                 )   **ORDER**
ARETE RITA KOSTOPOULOS and       )
ROBERT CHANG,                    )
                                 )
      Defendants.          )
_____)

Pending before the Court is the Motion to Dismiss, (ECF No. 14), filed by Defendant Arete R. Kostopoulos ("Kostopoulos") ("Kostopoulos's Mot. to Dismiss"). Pro se Plaintiff Daniel P. Klahn Sr., ("Plaintiff") filed a Response, (ECF No. 23) ("Resp. A"), and Kostopoulos filed a Reply, (ECF No. 26).[1]

Also pending before the Court is the Motion to Dismiss, (ECF No. 22), filed by Defendant Robert Chang ("Chang") ("Chang's Mot. to Dismiss"). Plaintiff filed a Response, (ECF No. 27) ("Resp. B"), and Chang filed a Reply, (ECF No. 30).[2]

**I.   BACKGROUND**

This action arises from alleged complications with Plaintiff's Bankruptcy filing. (Compl. 1:24–26, ECF No. 10). On or about September 13, 2013, Plaintiff contacted Kostopoulos, who works as an attorney, at Kostopoulos's Oakland office. (*Id.* 2:20–21). Specifically, Plaintiff

---

[1] In light of Plaintiff's status as a pro se litigant, the Court has liberally construed his filings, holding them to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2] Also pending before the Court is Chang's Motion to Extend Time to file his initial responsive pleading, (ECF No. 18). For good cause appearing, the Court grants Chang's motion to extend time *nunc pro tunc*.

contacted Kostopoulos to discuss whether filing for bankruptcy would save his Oregon "float home" from foreclosure (the "Oregon home").[3] (Kostopoulos's Mot. to Dismiss 2:25–27); (Chang's Mot. to Dismiss 2:19–21). In response, Kostopoulos advised Plaintiff that chapter 13 bankruptcy was the only solution. (Compl. 3:15–17).

On September 18, 2013, Plaintiff traveled to Kostopoulos's Oakland office and met with Chang, an attorney who works alongside Kostopoulos. (*Id*. 3:21–22, 4:1–2). During this meeting, Chang inventoried Plaintiff's assets and determined that he was eligible for chapter 13 bankruptcy. (*Id*. 5:15–18, 6:2–3). However, in November 2013, Chang advised Plaintiff that his chapter 13 bankruptcy must be converted to chapter 7, which would likely result in the loss of his Oregon home. (*Id*. 5:11–23). Due to the bankruptcy conversion and Plaintiff's failure to make a payment to a trustee, one of the invested banks filed a motion to be released from Plaintiff's bankruptcy so that the bank could repossess Plaintiff's vehicle, which it ultimately did. (*Id*. 6:2–15). Plaintiff paid approximately $2,800 to redeem the vehicle. (*Id*. 6:14–15). When it was returned to him, Plaintiff allegedly discovered damage to the vehicle, including a missing "tow system," which cost $2,500 to replace. (*Id*. 13–20).

In February 2014, Kostopoulos allegedly sought to be released as attorney of record from Plaintiff's matter. (*Id*. 8:2–4). Up until June 2014, Plaintiff spent time in prison[4] and upon his release, Plaintiff attempted to complete the bankruptcy process *pro se*. (*Id*. 7:12–22). It was at this time that Plaintiff discovered that the bankruptcy trustee settled other pending lawsuits filed by Plaintiff and took the entirety of the awarded damages for fee compensation. (*Id*. 7:13–18). Additionally, Plaintiff discovered that Chang allegedly failed to properly file

---

[3] Plaintiff states that he sought Defendant's counsel to stop foreclosure on his Oregon home but never states the home's exact location. (Compl. 2:20–23, 1–14).

[4] Plaintiff provides no detail regarding the length of his prison stay or the circumstances behind it.

Page 2 of 9

documentation relating to Plaintiff's assets and debt when filing the chapter 7 bankruptcy. (*Id*. 8:1–5).

On August 25, 2017, Plaintiff filed his Complaint alleging, *inter alia*, that Kostopoulos and Chang (collectively "Defendants") negligently filed his bankruptcy. (*Id*. 11:18–22). In the instant Motions, Defendants seek dismissal of the action for ineffective service and lack of personal jurisdiction. (Kostopoulos's Mot. to Dismiss 9:12–13); (Chang's Mot. to Dismiss 6:3–4).

## II. <u>LEGAL STANDARD</u>

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant raises the defense, the burden then falls on the plaintiff to prove sufficient facts to establish that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A plaintiff can carry this burden only by presenting sufficient evidence to establish that (1) personal jurisdiction is proper under the laws of the state where it is asserted; and (2) the exercise of jurisdiction does not violate the defendant's right to due process secured by the United States Constitution. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995); *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404-05 (9th Cir. 1994). To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make "a *prima facie* showing of jurisdictional facts." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001)). Furthermore, when analyzing such a motion to dismiss, "the court resolves all disputed facts in favor of the plaintiff." *Id.*

When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998). Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with . . . the Constitution of the United States." Nev. Rev. Stat. § 14.065. Thus, the

due process clause of the Fourteenth Amendment is the relevant constraint on Nevada's authority to bind a nonresident defendant to a judgment of its courts. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). In order to exercise jurisdiction, the nonresident must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

### III. <u>DISCUSSION</u>

In the instant Motions, Defendants argue that the Court lacks personal jurisdiction over them because Defendants do not have sufficient relevant contacts to Nevada. (Kostopoulos's Mot. to Dismiss 9:12–13); (Chang's Mot. to Dismiss 6:3–4). Plaintiff asserts that adjudicating the instant matter in a California court puts him in a disparate position due to Defendants' strong ties within the California legal community. (Resp. B 6:9–14). Plaintiff also states that he is a permanent resident of Nevada and that health complications render "travel risky." (Resp. A 3:21–24).

A personal jurisdiction analysis is governed by the Due Process Clause of the Fourteenth Amendment, which limits the power of a state's courts over defendants who do not consent to jurisdiction. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014). Personal jurisdiction has been limited under the Constitution to defendants that have "certain minimum contacts with [a state] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993) (quoting *Int'l. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Moreover, the contacts must arise out of relationships that the "defendant himself" created with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The "minimum contacts" inquiry is defendant-focused and is not satisfied by demonstrating contacts between the plaintiff and the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.

408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum [s]tate to justify an assertion of jurisdiction.").

Further, the defendant must have "minimum contacts" with the forum state itself, rather than mere contacts with persons who reside there. *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Kulko v. Superior Court of Cal., City and Cnty. of San Francisco*, 436 U.S. 84, 93 (1978) (declining to "find personal jurisdiction in a state . . . merely because [the plaintiff in a child support action] was residing there"). The defendant's contacts with the forum state may be intertwined with his transactions or interactions with the plaintiff or other parties, but a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

A court determines sufficient minimum contacts either through specific jurisdiction, where the specific interaction with the forum relating to the cause of action gives rise to the contacts, or through general jurisdiction, where the contacts with the forum are systematic and continuous, warranting the exercise of personal jurisdiction. *See, e.g.*, *Int'l Shoe Co.*, 326 U.S. at 316. If such contacts are established, a court must still determine that exercising personal jurisdiction would not offend the "traditional notions of fair play and justice." *Id.* The Court first addresses general jurisdiction and then addresses specific jurisdiction.

### 1. General Jurisdiction

General jurisdiction allows "a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Martinez*, 764 F.3d at 1066. To establish general personal jurisdiction, the plaintiff must demonstrate the defendant has sufficient contacts to "constitute the kind of continuous and systematic general business

contacts that 'approximate physical presence.'" *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002).

Courts consider such factors as whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated in the state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "[A] defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contacts with the forum." *Glencore Grain*, 284 F.3d at 1123 (citing *Helicopteros*, 466 U.S. at 415 n.9).

Here, Defendants are both California-based attorneys who facilitated a bankruptcy filing in California court. (Kostopoulos's Mot. to Dismiss 9:12–13); (Chang's Mot. to Dismiss 6:3–4). Plaintiff does not allege that Defendants solicited business in Nevada or otherwise sought to attract Nevada residents to their practice. Additionally, Defendants are not licensed to practice in Nevada. (Kostopoulos's Mot. to Dismiss 15:8–9); (Chang's Mot. to Dismiss 12:6–7). Because Defendants' do not have any apparent continuous or systematic connections with the forum state, the Court does not have general jurisdiction over them.

**2. Specific Jurisdiction**

Specific personal jurisdiction is established if a plaintiff can show: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum; (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction over the defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

Under the first element of the specific jurisdiction test, the plaintiff must establish that the defendant either (1) purposefully availed himself of the privilege of conducting his activities in the forum or (2) purposefully directed his activities toward the forum. *See, e.g.*, *Schwarzenegger*, 374 F.3d at 802. "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum." *Pebble Beach Co.*, 453 F.3d at 1155. "Evidence of direction generally consists of action taking place outside the forum that is directed at the forum." *Id.* The Court first turns to purposeful availment.

### A. Purposeful Availment

Here, Plaintiff fails to point to any conduct by Defendants that took place in Nevada. Plaintiff traveled to California to meet Defendants. (Compl. 2:20–21). Subsequently, Defendants filed a bankruptcy on behalf of Plaintiff in California court. (*Id.* 3:21–22, 4:1–2). At no point does Plaintiff allege that Defendants conducted any activity in Nevada. Therefore, the Court finds that Defendants have not availed themselves to Nevada's jurisdiction. *See Pebble Beach Co.*, 453 F.3d at 1156. The Court turns to whether Defendants' conduct constituted purposeful direction.

### B. Purposeful Direction

"In *Calder v. Jones*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis." *Id.* at 1156 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Following this ruling, courts adopted the "*Calder* effects test" to determine if a foreign act constituted purposeful direction. *See Id.* "To satisfy this test the defendant 'must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state.'" *Id.* Pursuant to the *Calder* effects test, the Ninth Circuit found that an attorney pursuing legal action in one state

with the express intent of using the judgment in a second state is subject to the specific jurisdiction of the second state. *See Lake v. Lake*, 817 F.2d 1416, 1423 (9th Cir. 1987).

Plaintiff asserts that personal jurisdiction is appropriate because Kostopoulos "knew Plaintiff had du[a]l residence in California and Nevada" and "chose to do business with a citizen of both California and Nevada." (Resp. A 4:1–5). However, Plaintiff sought Defendants' counsel in an effort to prevent foreclosure on his Oregon home. (Kostopoulos's Mot. to Dismiss 2:25–27); (Chang's Mot. to Dismiss 2:19–21F). Defendants' knowledge of Plaintiff's dual citizenship does not sufficiently create minimum contacts with Nevada. *See Burger King*, 471 U.S. at 478. Moreover, because Defendants filed the bankruptcy with the primary purpose of preventing foreclosure on Plaintiff's Oregon home, the filing of the bankruptcy is not expressly aimed at Nevada. *See contra Lake*, 817 F.2d at 1423 (finding that an attorney who obtained an ex parte order in California for the express purpose of gaining custody of a child located in Idaho, was subject to the specific jurisdiction of Idaho courts).

Additionally, Plaintiff argues that Defendants would be advantaged in California courts due to their "standing within the legal community." (Resp. B 6:9–14). However, Defendants' lack of ties to Nevada's legal community only further exhibits their lack of contacts with Nevada. Plaintiff also states that he is now a permanent resident of Nevada and that health complications render "travel risky". (Resp. A 3:21–24). However, a minimum contacts inquiry is defendant-focused and cannot be established through Plaintiff's relationship with Nevada. *See Helicopteros*, 466 U.S. at 417.

Accordingly, Plaintiff failed to make a *prima facie* showing of jurisdictional facts sufficient to give rise to either general or specific jurisdiction. Therefore, this Court cannot exercise personal jurisdiction over Defendants. However, although the Court is dismissing Plaintiff's case because it cannot exercise personal jurisdiction over either Defendant, Plaintiff

may refile his case if he believes he can later assert sufficient facts. Accordingly, the Court grants Kostopulous's and Chang's Motions to Dismiss.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Arete Kostopulous's Motion to Dismiss, (ECF No. 14), is **GRANTED**. The Court does not have personal jurisdiction over Kostopulous and therefore all claims against her are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Defendant Robert Chang's Motion to Extend Time, (ECF No. 18), is **GRANTED** *nunc pro tunc*.

**IT IS FURTHER ORDERED** that Defendant Robert Chang's Motion to Dismiss, (ECF No. 22), is **GRANTED**. The Court does not have personal jurisdiction over Chang and therefore all claims against him are **DISMISSED without prejudice**.

**DATED** this __14__ day of June, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge